OPINION
Defendant/appellant Jack Lou Hurst appeals the May 6, 1999, Judgment Entry of the Stark County Court of Common Pleas which dismissed and denied his Petition for Post-Conviction Relief. Appellee/plaintiff is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
On December 20, 1996, appellant was indicted on one count of endangering `children in violation of R.C. 2919.22(B)(2). Appellant pled not guilty to the charge within the indictment. The trial was held on February 13, 1997. The following facts were adduced at trial: On the evening of Saturday, December 14, 1996, paramedics responded to a 9-1-1 phone call by appellant from his Massillon home. When paramedics arrived, they found 11 month-old Sabrina Edney lying on a bed. She was awake but not responsive to vocal stimuli. Sabrina had an irregular heart beat and various bruises in various stages of healing. Upon receiving medical attention, it was believed that Sabrina had been violently shaken and was a victim of "shaken baby syndrome". Because appellant resided within Massillon and the parents of Sabrina lived in Canton, the case was investigated by both the Massillon and Canton Police Departments. Upon speaking with appellant, appellant gave Detective Grizzard, of the Massillon Police Department, the impression that Sabrina's father was responsible for her injuries. Appellant subsequently gave a taped statement to the Massillon Police Department. In that statement, appellant admitted that, shortly before he had contacted the paramedics, he had shaken Sabrina "kinda hard . . . probably too hard." A similar statement was given to the Canton Police Department. In the statement to Detective Bourdreau of the Canton Police Department, appellant admitted that he had "probably harmed" Sabrina, and that he should not have shaken her. Specifically, appellant told Detective Bourdreau that he had shaken Sabrina two times, "kinda hard." Appellant explained that when he discovered Sabrina with a hunched back, he "knew that [he] probably shook her too hard or something like that." In the statement to Detective Grizzard, appellant stated that he felt responsible for Sabrina's injuries, even though he did not cause the bruises on her body. At trial, appellant testified and attempted to minimize his prior confessions. He testified that he did not violently shake Sabrina but, rather, she may have been injured when his three year old son hit Sabrina in the head with a football. He attempted to explain his prior confessions by noting that the police had given him the impression that Sabrina had died and he had, at the time of the statement to the Canton Police Department, gone over twenty-six hours without sleep. Appellant presented a medical doctor, Dr. Phillip Teaque, who testified, as an expert witness, that Sabrina had not suffered from "shaken baby syndrome" but that her condition was caused by the re-aggravation of a previous injury. He concluded that Sabrina had suffered a previous subdural hematoma and could find no evidence of tests in the medical records to indicate that Sabrina had suffered a retinal hemorrhage. T.(III) 128-136. On cross-examination, the doctor admitted that he had a personal relationship with appellant. Further, the doctor admitted that he was not board certified in pediatrics or emergency medicine and had never attended a seminar on "shaken baby syndrome". The doctor also admitted that he did not know how much force was necessary to cause the syndrome nor the minimum number of shakes required to cause the effects of the syndrome. However, the doctor admitted that a three year old boy could not cause a subdural hematoma with an NFL football. The state presented an expert witness, Dr. Darryl Steiner, who was board certified in pediatrics, a member of the Academy of Pediatrics, a member of the Ohio State Chapter of Child Abuse and Neglect, and the director of the Akron Children's Hospital CARE Center which deals with children who have been potentially abused. Further, this expert had recently attended the first national seminar devoted exclusively to shaken baby syndrome and attended a national seminar devoted to the treatment of maltreated children. After reviewing Sabrina's records and personally examining her, he found that she had suffered a subdural hematoma and retinal hemorrhaging. He testified that both are characteristics of shaken baby syndrome. He agreed with appellant's expert witness that a three year old child could not have caused these injuries with a football. He explained that the force necessary to cause the syndrome is equivalent to a fall from a third story window, being struck by a car, or being an unrestrained passenger in a high speed motor vehicle accident. He stated that symptoms of shaken baby syndrome manifest themselves immediately and, therefore, he concluded that Sabrina's injuries occurred just prior to appellant's 9-1-1 call. The case was submitted to the jury on February 17, 1997 and a guilty verdict was returned. The trial court proceeded immediately to sentencing. The court found that this case was more serious than the typical offense, that serious injury had occurred, that there were no grounds to mitigate the conduct, recidivism was more likely and the minimum sentence of two years would demean the seriousness of the offense. Therefore, the trial court imposed a sentence of three years and a fine of $5,000.00. An appeal to this court followed which raised the following assignments of error: it was error to fail to instruct on a lesser offense; the verdict was against the manifest weight of the evidence; it was an abuse of discretion to deny appellant a new trial; prosecutorial misconduct was committed by the state; and the trial court erred in restricting examination of witnesses and refusing cumulative character witnesses. The appeal failed and a Memorandum in Support of Jurisdiction to the Ohio Supreme Court was denied on May 20, 1998. On February 18, 1999, appellant filed his first postconviction petition. Supplemental authority was filed March 9, 1999, and a renewed request for an evidentiary hearing was filed May 10, 1999. On May 6, 1999, the trial court issued a Judgment Entry which denied the postconviction petition on the grounds that the petition was not timely filed. Further, the trial court found that appellant had failed to meet his burden to establish that the time limit imposed for the filing the of a petition for post-conviction relief should not apply. See R.C.2953.21(A) 2953.23. The court went on to find that there was also a complete lack of evidentiary material to substantiate appellant's claim so as to justify relief under R.C. 2953.21. Accordingly, the court found that appellant had failed to demonstrate that he was entitled to relief under R.C. 2953.21. On May 19, 1999, the Judgment Entry was issued denying an evidentiary hearing. This timely appeal followed. It is from the May 6, 1999, and May 19, 1999, Judgment Entries that appellant prosecutes this appeal, raising the following assignments of error:
 I THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S PETITION FOR POST-CONVICTION RELIEF AS BEING UNTIMELY FILED.
 II THE TRIAL COURT ERRED IN DENYING A HEARING ON DEFENDANT-APPELLANT'S PETITION FOR POST-CONVICTION RELIEF.
 III THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S PETITION FOR POST CONVICTION RELIEF.
 A. THE DUE PROCESS ARGUMENTS RAISED IN THE POST CONVICTION MOTION INVOLVED MATTERS OUTSIDE THE TRIAL RECORD AND THEREFORE WERE NOT BARRED BY RES JUDICATA.
 B. THE POST CONVICTION MOTION ADEQUATELY SUPPORTED DEFENDANT-APPELLANT'S CLAIM OF INEFFECTIVE ASSISTANCE AND INVOLVED MATTERS OUTSIDE THE TRIAL RECORDS, WHICH WOULD HAVE BEEN MORE FULLY DEVELOPED AT HEARING.
 I
In appellant's first assignment of error, appellant argues that the trial court erred in dismissing appellant's petition for post-conviction relief as being untimely filed. We disagree. Revised Code Section 2953.21(A)(2) sets forth the time limitation for filing a post-conviction relief petition. The petition must be filed "no later than 180 days after the date on which the trial transcript is filed in the Court of Appeals. . . ." R.C.2953.21(A)(2). In this case, the record reveals that the transcript of proceedings was filed in the Court of Appeals on April 30, 1997. The petition was due on or before November 3, 1997. The petition was filed February 18, 1999, over a year and three months after it was due. Pursuant to R.C. 2953.21(A), the petition for post-conviction relief was filed untimely. A petition for post-conviction relief filed after the above-mentioned 180 days have passed still may be considered by the trial court but only if appellant can meet the requirements of R. C. 2953.23. The relevant portions of that section of the Revised Code state the following: ". . . [A] court may not entertain a petition filed after the expiration of the period prescribed in division (A) of [2953.21] . . . unless both of the following apply:
 (1)(a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief. (emphasis added) . . .
 (2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted. . . ."
R.C. 2953.23(A). In this case, appellant argues that he has met the requirements of Revised Code 2953.23(A), specifically, that he was unavoidably prevented from discovery of the facts upon which the petitioner relies to present his claim for relief in his petition for post-conviction relief. Appellant supplied an affidavit with his petition for post-conviction relief that states he was unavoidably prevented from discovering the relevant facts upon which his Petition is based. Appellant stated that he had the same attorney throughout his trial and appeal and did not confer with other attorneys for an independent review of this case until late 1998, because he was financially unable to retain counsel for review of his case until late 1998. He argues that until he obtained new counsel, he was unaware and unavoidably prevented from discovering the following: (1) false, misleading and/or perjured testimony presented by witnesses at the grand jury, (2) the lack of proper foundation for expert testimony at trial, (3) the sentence imposed by the trial court was contrary to law, (4) his trial attorneys were ineffective in failing to seek pretrial suppression of the statements made to the police, (5) statements to the police were illegally obtained and (6) his trial attorneys were ineffective for failing to call appellant's own expert witness at trial and for failing to object to the state's expert testimony. We find that appellant has not shown he was unavoidably prevented from discovery of the facts upon which he now relies as the basis for his petition for post-conviction relief. Appellant relies upon facts that were available to appellant previously and we see no justifiable reason for his delay in presenting his claim. Appellant's affidavit asserts that, since he had the same attorney throughout the trial and appeal process and he was financially unable to retain counsel for an independent review, he was unaware and unavoidably prevented from discovering the facts upon which his petition lies. Appellant's argument that he was unavoidably delayed in discovering the facts upon which he relies due to his financial inability to retain counsel is without merit. An indigent petitioner does not have a state or federal constitutional right to appointed counsel in order to prepare and file a Petition for Postconviction Relief. See State v. Crowder (1991), 60 Ohio St.3d 151, 573 N.E.2d 652, paragraph 1 of syllabus. Therefore, it follows that appellant had the same opportunity to prepare and file a Petition for Postconviction Relief as any other indigent petitioner. Further, appellant has failed to provide this court with factual information that was not available to appellant within the 180 day time limit. The facts upon which appellant's Petition relies were available within the 180 day time limit. The facts forming the basis of appellant's Petition were available in the initial complaint filed by the Massillon Municipal Police Department and the record of proceedings. Appellant relies upon the transcript of proceedings and the February 24, 1997, Judgment Entry whereby appellant was found guilty by a jury and a sentence was imposed. "The [savings] statute's [R.C. 2953.23], purpose is to permit courts to consider factual information that may come to light after a defendant's trial, not to permit defendants to advance new theories using the same underlying facts." State v. Brewer (Sept. 8, 1998), Highland App. No. 98-CA-5, 1998 WL 610036, unreported, at 4. See also, State v. Owens (1997), 121 Ohio App.3d 34, 37, 698 N.E.2d 1030,1033. (Appellant was not unavoidably delayed when petition relied upon facts from record below and merely contained new arguments with respect to those facts.) Therefore, appellant's affidavit, taken at face value, does not present facts which allege a situation amounting to "unavoidable delay." Appellant is attempting to present new legal theories, as advanced by new counsel, but these theories are based upon the same facts available to appellant within the initial 180 day time limit. Because appellant presents new legal theories, not new facts which were unavailable to appellant, appellant's argument fails. We find the facts upon which appellant relies were available and could have been discovered at the time of trial or within the 180 days following the filing of the transcript in this court. We will not reach the issue of the alleged constitutional errors, the second prong of R.C. 2953.23(A), since we find appellant has failed to meet the first prong of the test contained in R.C. 2953.23 (A)(1). See State v. Thompson (Sept. 16, 1998), Allen App. No. 1-98-20, unreported, 1998 WL 667642 Appellant's first assignment of error is overruled.
 II.
In appellant's second assignment of error, he claims the trial court erred in denying a hearing on his petition for post-conviction relief. We disagree. A hearing need not be held if the court determines that, based upon the petition and the files and the records of the case, petitioner is not entitled to relief. R.C. 2953.21(E). As discussed in assignment of error I, R.C.2953.23(A) governs untimely petitions for postconviction relief. If a petition is untimely, it is subject to dismissal without a hearing unless both criteria under R.C. 2953.23(A)(1) and (2) are satisfied. State v. Pasqualone (Sept. 30, 1999), Ashtabula App. No. 98-A-0074, unreported, 1999 WL 960767. In the case sub judice, the trial court concluded that appellant's petition and supporting documentation failed to meet the statutory requirements of2953.23(A). We agree with the trial court, as held in assignment of error I. Therefore, the trial court did not error in denying appellant a hearing on his Petition for Postconviction Relief. Appellant's second assignment of error is overruled.
 III.
In his third assignment of error, appellant claims that the trial court erred in denying appellant's petition for post-conviction relief. A trial court may not entertain a petition for postconviction relief if the petition is filed untimely and fails to meet the requirements for late filing as delineated in R.C.2953.23(A), supra. Based upon our finding in assignment of error I, which holds that appellant's petition was untimely and failed to meet the requirements of R.C. 2953.23(A), the trial court could not entertain appellant's petition for post-conviction relief on its merits. While the trial court should not have reached the merits of appellant's petition because it was untimely filed, the denial of the petition was appropriate as set forth in assignment of error I above. Appellant's third assignment of error is overruled.
The Judgment of the Stark County Court of Common Pleas is, therefore, affirmed.
By EDWARDS, J. WISE, P.J. and HOFFMAN, J. concurs